IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MUTUAL BENEFIT INSURANCE     *
COMPANY,

                                           *

        Plaintiff,

                                           *

        v.                                Civil Action No. RDB-20-0069

                                           *

R. GATES CONSTRUCTION CO.,
INC., RONALD GAJEWSKI, and       *
FRANK TOMCZEWSKI

                                           *

        Defendants.

                                           *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Mutual Benefit Insurance Company ("Mutual Benefit") brings this case against Defendants R. Gates Construction Co., Inc. ("R Gates Construction"), Ronald Gajewski ("Gajewski"), and Frank Tomczewski ("Tomczewski") seeking a declaration of its rights, duties, and liabilities under an artisan contractor's insurance policy issued to R. Gates Construction. (*See* Complaint at ¶ 1, ECF No. 1.) Mutual Benefit is currently providing a defense, subject to a complete reservation of rights, to R. Gates Construction and its sole owner, Gajewski, in a lawsuit captioned *Frank Tomczewski v. Ronald T. Gajewski and R. Gates Construction Co., Inc.*, currently pending in the Circuit Court for Baltimore County, Maryland, Case No. C-03-CV-19-002571. The case arises out of an accident that resulted in injury to Tomczewski while he was working under Gajewski's direction. (*Id.* at ¶ 2.) Mutual Benefit seeks a declaratory judgment that the relevant policy does not provide coverage for the underlying lawsuit, because Tomczewski was an employee of R. Gates Construction, and the

1

policy excludes coverage for bodily injury to the insured's employees.   (*Id.* at ¶ 3.)
Additionally and alternatively, Mutual Benefit seeks rescission of the policy as of its January
28, 2019 inception, alleging repeated material misrepresentations made by R. Gates
Construction and Gajewski to Mutual Benefit.

The parties' submissions have been reviewed and no hearing is necessary.  *See* Local
Rule 105.6 (D. Md. 2018).   There is no genuine issue of material fact with respect to the
status of Tomczewski in this case, and Mutual Benefit is entitled to judgment as a matter of
law.   Additionally, in light of the status of Tomczewski as an employee of R. Gates
Construction, Mutual Benefit is entitled to rescission of the subject insurance policy as a
result of the clear and repeated misrepresentations made by R. Gates Construction to Mutual
Benefit upon which it relied.  Accordingly and for the reasons that follow, Plaintiff Mutual
Benefit's Motion for Summary Judgment (ECF No. 31) is GRANTED; and Defendant
Tomczewski's Cross Motion for Summary Judgment (ECF No. 33) is DENIED.
Declaratory Judgment shall be entered in favor of Mutual Benefit.

## BACKGROUND

### A.  The Relationship Between Gajewski and Tomczewski

Gajewski is the sole shareholder and president of Defendant R. Gates Construction,
which is licensed as a home improvement/salesman contractor.  (ECF No. 1 at ¶¶ 6-8;
Rosenberg Decl., Ex. A, Gajewski Federal Dep. at 20:24, ECF No. 31-4.)   Since 2000,
Gajewski has owned and resided at Streamwood Farm, a 52-acre farm located at 13100 Fork
Road, Baldwin, Maryland.  (*Id.* at ¶ 6.)  Streamwood Farm has a 15-acre hay field, private
horse stables, and an indoor arena for Gajewski's fiancée's horses.  (ECF No. 31-4 at 18:13-

2

19:13.)  R. Gates Construction has two business locations, one at Streamwood Farm, and one at another property owned by Gajewski, located at 2819 North Point Boulevard, Dundalk, Maryland.  (*Id.* at 29:10-20.)

R. Gates Construction is also engaged in the business of property management.  (*Id.* at 69:1-72:5; Ex. D, R. Gates Construction Trade Name Application, ECF No. 31-7.)  As a result of contracts which Gajewski essentially wrote to himself, since December 1, 2000, his company R. Gates Construction "agreed to perform 'the daily maintenance and operation'" of Streamwood Farm, his residence.  (Rosenberg Decl., Ex. C, July 26, 2019 Letter from Bradford Carney, Esquire to Mutual Benefit pp. 3-4, with attached contract at pp. 22-23, ECF No. 31-6.)  Further contracts specified that R. Gates Construction was to perform a number of projects at Streamwood Farm in exchange for the payment of the costs of such projects, plus $10.  (*Id.* at pp. 24-29.)  These included pond repairs, building a heavy use area, erecting a fence, installing a masonry sign, building a horse arena and stables, and building a manure pit.  (*Id.*)  On December 13, 2011, Gajewski created another contract pursuant to which R. Construction was to build his new residence at Streamwood Farms, again in exchange for the payment of expenses, plus $10.  (ECF No. 31-4 at 64:8-65:14; ECF No. 31-6 at p. 30.)  The erection of that new residence has been in progress ever since.  (*Id.*)

Tomczewski holds a home improvement salesman/contractor license from the Maryland Department of Labor and lists his registered trade name as "Peninsula Builders." (Rosenberg Decl., Ex. Q, Tomczewski Deposition, at 67:2-17, ECF No. 31-20; Ex. U, Tomczewski Salesman/Contractor License, ECF No. 31-24.)  For the last thirty years he has performed work for Gajewski and R. Gates Construction (ECF No. 31-4 at 27:9-11; ECF

31-20 at 11:7-12:2), and for the past few years in particular, R. Gates Construction has been Tomzewski's primary source of employment.  According to Tomczewski's notebook, from July 31 to December 31, 2017, he worked 593.5 hours for R. Gates Construction and only 44 hours on projects for other clients.  (Rosenberg Decl., Ex. S, Tomczewski Time Entry Notebook, ECF No. 31-22; Ex. FF, Summary of Tomczewski Time Entries, ECF No. 31-35.)  For the entire calendar year of 2018, Tomczewski worked 1,206 hours for R. Gates Construction, and 174 hours for other clients.  (*Id.*)  From January 1 to June 21, 2019, he worked 282.5 hours for R. Gates Construction, and 97 hours for other clients.  (*Id.*)  Accordingly, during the two-year time period from July of 2017 until June of 2019, Tomczewski devoted at least 87% of his time to R. Gates Construction.

Tomczewski's relationship with R. Gates Construction is distinguishable from his relationships with other clients, not only by this significant disparity in hours of work performed, but in other respects as well.  First, Tomczewski never executed any contracts for R. Gates Construction or Gajewski specifying his status as a home improvement contractor, as he did with other businesses and individuals for whom he worked.  (ECF No. 31-4 at 38:3-8; ECF No. 31-20 at 23:15-20, 45:10-46:1.)  Second, Tomczewski's work for R. Gates Construction was not confined to home improvement.  Tomczewski regularly engaged in work such as feeding feral cats (ECF No. 31-4 at 42:16-18; ECF No. 31-20 at 16:13-17:2, 19:11-16, 86:20-87:17, 125:21-127:2); collecting rent from tenants of properties owned by Gajewski (ECF No. 31-4 at 42:13-15; ECF No. 31-20 at 31:15-32:22; Ex. R, July 10, 2019 Letter from Bradford Carney, Esquire to John Amato, IV, Esquire at RTG000027, ECF No. 31-21); and sundry jobs at Gajewski's home and farm, such as bailing hay and

4

working on Gajewski's stables (ECF No. 31-4 at 42:21-23; ECF No. 31-20 at 21:3-15, 22:5-15, 23:2-14).

It is important to note that the Maryland Workplace Fraud Act., Md. Code Ann., Lab. & Empl. §§ 3-901, *et seq.*, presumes that anyone who hires a person to provide "construction services" creates an employer-employee relationship, unless they provide the worker (and maintain record of) a written notice of classification as an "independent contractor." While some of Tomczewski's work for R. Gates Construction constituted "construction services" as defined by § 3-901(b) (ECF No. 31-4 at 49:7-51:24), R. Gates Construction never provided Tomczewski any notice required by § 3-914 that is to be provided to an independent contract or "exempt person" (ECF No. 31-16; ECF No. 31-18; ECF No. 31-25; Ex. HH, Form Written Notice, ECF No. 31-37). R. Gates also did not file an IRS Form 1099-MISC, which is required when a company pays an individual acting as an independent contractor an amount in excess of $600 in a calendar year, with respect to the work done by Tomczewski. (*Id.*)

It is undisputed that Gajewski would instruct Tomczewski on a daily basis when and where he was needed and what work would be performed. (ECF No. 11 at ¶ 29; Rosenberg Decl., Ex. K, Gajewski State Dep. at 15:6-17:9, 32:9-35:10, 40:10-44:21, ECF No. 31-14; ECF No. 31-4 at 47:23-51:24; ECF No. 31-20 at 23:2-7, 49:17-22, 50:21-51:1, 51-9-52:9.) Whenever Gajewski instructed Tomczewski that there was work to do for R. Gates Construction, Tomczewski would prioritize that work over projects for his home improvement clients and perform whatever work Gajewski instructed. (*Id.*) R. Gates Construction, through Gajewski, also controlled and directed the manner in which

Tomczewski performed this work.  (*Id.*)  Gajewski sometimes worked alongside Tomczewski and, when he did, he provided specific instructions to Tomczewski throughout their work together.  (ECF No. 31-20 at 49:6-22, 51:9-18, 53:1-54, 59:11-20, 61:13-62:9, 62:16-63:12, 64:10-65:24.)    In performing his work, Tomczewski often used tools, equipment, and materials supplied by R. Gates Construction.  (ECF No. 31-20 at 47:10-48, 52:10-20.) Tomczewski understood that Gajewski retained the power to hire and discharge him throughout their relationship.  (ECF No. 11 at ¶ 37.)  Significantly, he referred to Gajewski as his "employer" and his "boss."  (ECF No. 31-20 at 64:22-65:24; ECF No. 31-21 at p. 10.)

Tomczewski was compensated for his work for R. Gates Construction at an hourly rate of $25.  (Rosenberg Decl., Ex. M, R. Gates Construction Admission No. 1, ECF No. 31-16; Ex. O, Gajewski Admission No. 1, ECF No. 31-18; Ex. V, Tomczewski Admission No. 1, ECF No. 31-25.)  According to R. Gates Construction's records, it paid Tomczewski at least $23,005.00 in 2015 (partial records); $31,491.50 in 2016 (partial records); $38,487.00 in 2017; $28,401.50 in 2018; and $6,527.00 from January through June of 2019.  (ECF No. 31-4 at 28:10-29:2, Ex. B, Tomczewski Invoices, ECF No. 31-5; Ex. N, Partial Record of Payments from April through November of 2015, ECF No. 31-17; ECF No. 31-20 at 28:6-18; ECF No. 31-35.)  R. Gates Construction paid these invoices in cash and considered the sums to constitute "wages."  (ECF No. 31-20 at 28:6-20, 31:8-32:22, 58:6-7; ECF No. 31-4 at 28:10-29:2.; ECF No. 31-21 at RTG000027.)  Tomczewski did not report these wages paid by R. Gates Construction on his federal or Maryland tax returns from 2015 through 2018.  (ECF No. 31-4 at 28:10-29:1; ECF No. 31-17; ECF No. 31-20 at 28:6-18; Exs. X-EE, ECF Nos. 31-27 through 31-34; ECF No. 31-35.)  For example, in his 2015 tax returns,

Tomczewski reported "business income" of $9,233, even though R. Gates Construction paid him at least $23,005, and continued this practice of reporting less in "business income" than the wages he earned from R. Gates Construction in 2016, 2017, and 2018.  (*Id.*)

While Tomczewski has never received a W2 statement from Gajewski or R. Gates Construction[1] (Ex. 2, Tomczewski Affidavit at ¶ 4, ECF No. 33-2), R. Gates Construction never included the cash payments made to Tomczewski in the subcontractor deductions on its tax returns.  For example, in 2016 R. Gates Construction paid Tomczewski $31,491.50, but only reported $19,505 in payments to subcontractors that year (Rosenberg Decl., Ex. E, R. Gates Construction 2016 Federal Tax Return at RTG000058, ECF No 31-8); in 2017, it paid Tomczewski $38,487.00 in cash wages, but only deducted $450 for subcontractor labor (Rosenberg Decl., Ex. F, R. Gates Construction 2016 Federal Tax Return at RTG000072, ECF No 31-9); and in 2018 it took no deductions for subcontractor labor even though it paid Tomczewski $28,401.50 in cash wages (Rosenberg Decl., Ex. G, R. Gates Construction 2016 Federal Tax Return at RTG000089, ECF No 31-10).

**B. Mutual Benefit Policy Issued to R. Gates Construction**

Mutual Benefit insured R. Gates Construction under Artisan Contractor policy No. AC00907030 ("Policy") for the policy period from January 28, 2019 to January 28, 2020. (Policy, ECF No. 1-2.)  The Policy was a renewal of insurance contracts that had been in effect since 1993.  (*Id.* at 3 of 135.)  As relevant here, the Policy contains a standard 16-page Commercial General Liability Coverage Form. (ISO Form CG 00 01 12 07, "CGL Form", ECF No. 1-2 at 28 of 135).  The Policy does not provide worker's compensation insurance,

---

[1] Tomczewski never received any employee-related benefits, such as health insurance, disability insurance, pension, or 401(k) from Gajewski or R. Gates Construction.  (Ex. 2, Tomczewski Affidavit at ¶ 4, ECF No. 33-2.)

and thus contained the following exclusion for bodily injury claims by an employee of the insured:

**2. Exclusions**

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business;

       . . .

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

(*Id.* at 28-29 of 135.)  Additionally, the Policy is subject to multiple conditions, including the following:

**6. Representations**

By accepting this policy, you agree:

    a. The statements in the Declarations are accurate and complete;
    b. Those statements are based upon representations you made to us; and
    c. We have issued this policy in reliance upon your representations.

(*Id.* at 38 of 135.)

    R. Gates Construction procured the Policy through its broker of record and agent,

Fred Meyer & Sons, Inc.  (Starz Decl. at ¶ 2, Exs. 1 through 3, ECF Nos. 31-48 through 31-

50.)   At all material times R. Gates Construction represented to Mutual Benefit that its business activities consisted solely of carpentry and snow removal.  (ECF No. 1-2 at 5 of 135; Rosenberg Decl., Exs. H-J (2016-2018 Audit Forms), ECF Nos. 31-11 through 31-13.) Mutual Benefit's Policy was priced on an estimated basis and was subject to annual audit to assess the insured's risks and whether additional premium should be collected.  (ECF No. 1-2 at 38 of 135; Ulrich Decl. at ¶ 11, ECF No. 31-38.)  Mutual Benefit also relied on the audit process to determine whether its insureds remained within their underwriting guidelines. (*Id.*)

Every year, Mutual Benefit sent R. Gates Construction an audit form that required information concerning all of R. Gates Construction's employees, including their identities, duties, and remuneration.  (ECF No. 38; Starz Decl. at Exs. 5 and 6, Audit Forms, ECF Nos. 31-52 and 31-53.)  The form also required R. Gates Construction to provide detailed information concerning all insured and uninsured subcontractors, including their number, identity, whether they were insured, and the dollar amounts of work subcontracted to them. (*Id.*)  Indeed, all of Mutual Benefit's audit forms contained the following instruction: "Cost of Work Subcontracted—Show the total cost of all work performed by other than your own employees.  Include the cost of all labor, materials and equipment furnished.  PLEASE PROVIDE    COPIES    OF    CERTIFICATES    OF    INSURANCE    THESE SUBCONTRATORS SHOULD HAVE PROVIDED TO YOU." (*Id.*)

R. Gates Construction's broker repeatedly advised Gajewski about the need to disclose its subcontracted work to Mutual Benefit.  (Starz Decl. at Exs. 7 and 9, correspondence from Fred Meyer & Sons to R. Gates Construction ECF Nos. 31-54 and 31-

56.)   However, R. Gates Construction affirmatively represented that R. Gates Construction did not subcontract any work.   (ECF No. 31-11; ECF No. 31-12; ECF No. 31-13.)   As Gajewski stated to his broker, "[R. Gates Construction does] not use subcontractors. . . . Never did never will."  (Starz Decl., Ex. 9, email exchange between Fred Meyer & Sons and Gajewski, ECF No. 31-56.)   R. Gates Construction ultimately submitted its audit reports representing that it had one clerical employee, Gajewski's fiancée Laurie Connor, who was paid $17,000 annually.   (ECF Nos. 31-11 through 31-13.)   R. Gates Construction also provided the number of subcontractors it used, and the dollar amount of subcontracted work, listing both as "0."  (*Id.*)   Thus, R. Gates Construction never identified Tomczewski, to whom it was paying tens of thousands of dollars per year, either as an employee or as a subcontractor.  (*Id.*)

Mutual Benefit's underwriting guidelines prohibited insuring risks associated with farming operations and the operation of stables, regardless of whether those operations were private or commercial.   (ECF No. 31-38 at ¶¶ 23-24; Ulrich. Del., Ex. 5, ECF No. 31-43.) The underwriting also prohibited insuring risks associated with renting contractor equipment.   (*Id.*)   R. Gates Construction never advised Mutual Benefit that it had a contract to supply equipment and to operate and maintain Gajewski's farm and private stables beginning in 2000.  (ECF No. 31-38 at ¶ 22.)

### C.  Incident on June 21, 2019 and Underlying State Lawsuit

On June 21, 2019, Tomczewski drove to Gajewski's property located at 2819 North Point Boulevard to feed cats, as he did every day at Gajewski's request.  (Tomczewski State Court Complaint, ECF No. 1-3; ECF No. 11 at ¶ 23; Gajewski Answer to Complaint, ECF

No. 15 at ¶ 14; ECF No. 31-20 at 16:10-17:2.)  Tomczewski then called Gajewski, as he did daily, to inquire whether there was work for Tomczewski at Streamwood Farm that day. (ECF No. 31-20 16:10-17:8, 18:23-20:4; ECF No. 31-14 at 14:14-15:21.)  Gajewski directed Tomczewski to come to the farm after feeding the cats and told him that they "would be working on the roof."  (ECF No. 31-20 at 16:10-17:8, 18:23-20:4; ECF No. 31-14 at 14:14-15:21.)

Tomczewski arrived at Streamwood Farm on June 21, 2019 around 9:30-9:45 a.m., but when he arrived, Gajewski "came out … and said [they] weren't going to be working on the roof, [they] were going to be doing something else."  (ECF No. 31-20 at 17:12-18:4.) Gajewski then headed to the front of the farm "for something," leaving Tomczewski waiting for Gajewski to instruct him as to what tasks he would be doing that day.  (*Id.* at 20:10-13, 22:16-23:7.)  Tomczewski was "fill[ing] his time" doing "different things that needed done in the house" awaiting his instructions when Gajewski called him on his wireless phone and instructed him to leave the house, which was under construction, and drive R. Gates Construction's front-loader/backhoe to the other end of the farm.  (*Id.* at 17:22-18:4, 53:1-55:13, 61:13-18; ECF No. 31-14 at 31:20-34:7, 35:7-10; Ex. P. Gajewski Response to EISI Interrogatory No. 23, ECF No. 31-19.)  Gajewski needed the backhoe and Tomczewski's help to unload sawdust for the horse stables.  (*Id.*)

After Tomczewski delivered the backhoe, Gajewski took control of the vehicle and instructed Tomczewski to direct the operator of the dump truck, who had arrived with the sawdust, to move the truck in an effort to loosen compacted sawdust.  (ECF No. 31-14 at 60:12-61:20; ECF No. 31-19 at No. 23.)   According to Tomczewski, Gajewski also

instructed him to direct the operator of the truck to shake the dumpster in an effort to loosen the sawdust, and Tomczewski obliged.  (ECF No. 31-20 at 61:24-63:5; Ex. T, Tomczewski Opp. to EISI Motion to Dismiss or, in the Alternative, for Summary Judgment, at pp. 8-9, ECF No. 31-23.)  Tomczewski testified that Gajewski then instructed him to check the dumpster to determine if that course of action had been successful, and he again obliged.  (ECF No. 31-20 at 63:6-12; 64:10-21; ECF No. 31-23 at pp. 8-9.)

Throughout this time, Gajewski was seated in and operating the backhoe and was providing express directions to Tomczewski.  (ECF No. 31-14 at 54:6-14; ECF No. 31-19 at No. 23; ECF No. 31-20 at 64:22-65: 24; ECF No. 31-23 at p. 10.)  Although the events that unfolded immediately thereafter are the subject of dispute in the pending personal injury lawsuit in state court, it is undisputed that Tomczewski screamed, and Gajewski saw Tomczewski's head pinned between the bucket of the backhoe and the dumpster of the truck.  (ECF No. 31-14 at 54:15-57:4.)  Tomczewski was seriously injured in the course of assisting Gajewski in unloading the sawdust.  (*Id.* at 110:4-111:17.)

Tomczewski filed suit in the Circuit Court for Baltimore County against R. Gates Construction, Gajewski, and the company that owned the truck delivering the sawdust for his injuries.  (ECF No. 1-3.)  In successfully opposing the defendants' motion to dismiss, or in the alternative for summary judgment in that state cause of action, Tomczewski maintained that he acted reasonably at all times because *he was following his employer's instructions*.  (ECF No. 31-23 at pp. 8-9 (emphasis added).)  Accordingly, Mutual Benefit initially is providing a defense to Gajewski and R. Gates Construction under a reservation of rights.  (ECF No. 11 at ¶ 25; ECF No. 15 at ¶ 16.)

Plaintiff Mutual Benefit filed the Complaint in this action on January 1, 2020.  (ECF No. 1.)   Defendant Tomczewski filed his Answer on January 31, 2020.  (ECF No. 11.) Defendants Gajewski and R. Gates Construction filed their Answer on February 4, 2020. (ECF No. 15.)   On July 31, 2020, Mutual Benefit filed a Motion for Summary Judgment, seeking a declaratory judgment that it does not owe its insureds, Gajewski and R. Gates Construction, a defense or indemnity in the suit brought by Tomczewski.  (ECF No. 33-1.) Mutual Benefit additionally and alternatively seeks a declaratory judgment that it may rescind the Policy issued to R. Gates Construction due to repeated misrepresentations made by the company to Mutual Benefit in the underwriting.  (*Id.*)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see*

*also Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

### A. Mutual Benefit Has No Duty to Defend or Indemnify R. Gates Construction or Gajewski.

Mutual Benefit's Policy issued to R. Gates Construction excludes from coverage all claims asserted by an employee of the insured for bodily injury suffered in the course of his employment. (ISO Form CG 00 01 12 07, "CGL Form," at 28-29 of 135, ECF No. 1-2.) It is undisputed that Tomczewski was injured in the course of his work for R. Gates Construction. Therefore, the question is whether Tomczewski was an employee of R. Gates Construction. Mutual Benefit claims there is no genuine factual dispute and that Tomczewski was an R. Gates Construction employee as a matter of law. (ECF No. 31-1 at 21.) Tomczewski argues instead that he was an independent contractor, who would not be excluded under the Policy. (ECF No. 33 at 3.) For their part, Gajewski and R. Gates Construction argue that disputes of fact remain over this question. (ECF No. 36-1 at 1-2.)

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Maryland law, in the interpretation of an insurance contract, courts follow the general rules of contract construction. *See Cheney-Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1998); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985). Accordingly, principles of contract law govern the relevant Mutual Benefit insurance policy issued to R. Gates Construction, and the rights and obligations of the Parties are determined by the terms of that contract. *Columbia Town Ctr. Title Co. v. 100 Inv. Ltd. P'ship.*, 36 A.3d 985, 1005

(Md. Ct. Spec. App. 2012). "[I]f no ambiguity in the terms of the insurance contract exists, a court has no alternative but to enforce those terms." *Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. 2001) (citing *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 773 (Md. 1997)).

In *Interstate Fire and Cas. Co. v. Dimensions Assurance Ltd.*, 843 F.3d 133 (4th Cir. 2016), the United States Court of Appeals for the Fourth Circuit directly addressed the issue of whether an individual was an employee within the general liability portion of an insurance policy under Maryland law. The Court held that the term "employee," if left undefined by the relevant policy, is unambiguous and must be given its "customary, ordinary, and accepted meaning, as determined by the fictional reasonably prudent lay person." *Id.* at 138 (citing *Connors v. Gov't' Emps. Ins. Co.*, 113 A.3d 595, 603 (Md. 2015)). The Court further held that the customary meaning of employee "tracks the common-law right-to-control test used to determine the existence of a master-servant relationship." *Id.* at 138-39 (citing *Whitehead v. Safway Steel Prods., Inc.*, 497 A.2d 803, 808-09 (Md. 1985)). In *Whitehead*, the Maryland Court of Appeals reaffirmed this "right-to-control" test:

> This Court has traditionally considered five criteria in determining whether or not an employer/employee relationship exists between two parties. These criteria include . . . (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer.

497 A.2d at 808-09 (citing *Mackall v. Zayre Corp.*, 443 A.2d 98, 103 (Md. 1982)). As the court held, "[o]f the five factors, the factor of control stands out as the most important." *Id.* at 809. Whether the employer "has the right to control and direct the employee in the performance of the work and in a manner in which the work is to be done" is the "decisive"

or "controlling" test. *Id.* (citing *Mackall*, 443 A.2d at 103; *L. & S. Construction Co. v. State Accident Fund*, 155 A.2d 653, 656 (Md. 1959)).

"The distinction," between an employee and an independent contractor, "it would seem, is in the degree to which the power of control, if it exists, is exercised." *L.M.T. Steel Prods., Inc. v. Peirson*, 425 A.2d 242, 244 (Md. Ct. Spec. App. 1981). "A worker is considered an independent contractor if he performed the work 'according to his own means and methods free from control of his employer in all details connected with the performance of the work except act to the its product or result.'" *Injured Workers' Ins. Fund v. Orient Exp. Delivery Serv., Inc.*, 988 A.2d 1120, 1132 (Md. Ct. Spec. App. 2010) (quoting *L.M.T. Steel*, 425 A.2d at 245; *see also Williams Const. Co. v. Bohlen*, 56 A.2d 694 (Md. 1948)). Thus, to have an employment relationship under Maryland law, "the 'employer' must have some ability, should he care to exercise it, to tell the 'employee' what to do and how and when to do it." *LM.T. Steel*, 425 A.2d at 244-45. If the employer has no right to exercise this "minimal power of control," then an independent contractor relationship may exist. *Id.* at 245. "The parties' subjective belief as to whether an employment relationship exists is not dispositive of the legal question of whether one is the employer of another, 'except as such belief indicates an assumption of control by the one and submission to control by the other.'" *Whitehead*, 497 A.2d at 812 (quoting *Sun Cab Co. v. Powell*, 77 A.2d 783, 785-86 (Md. 1951)).

Under Maryland law, the existence of the employer/employee relationship is ordinarily a question reserved for the finder of fact. *Great Atl. & Pac. Tea Co. v. Imbraguglio*, 697 A.2d 885, 893 (Md. 1997) (citing *Mackall*, 443 A.2d at 103). "When, however, the existence of the relationship is undisputed, or the evidence on the issue is uncontroverted,

unless conflicting inferences can be drawn from that evidence, the trial court is entitled to treat the matter as a question of law." *Id.* (citing *Whitehead*, 497 A.2d at 808). In the case at hand, there is no genuine dispute of material fact with respect to the nature of the relationship between R. Gates Construction and Tomczewski. Conflicting inferences cannot be drawn from that evidence. Tomczewski was an employee as a matter of law.

The first three factors of the right-to-control test are easily satisfied in this case. Gajewski retained the power to hire and discharge Tomczewski throughout their relationship. (ECF No. 11 at ¶ 37.) Tomczewski was also compensated for his work for R. Gates Construction on the basis of an hourly rate of $25. (Rosenberg Decl., Ex. M, ECF No. 31-16; Ex. O, ECF No. 31-18; Ex. V, R. Gates Construction, Gajewski, and Tomczewski Admission No. 1, ECF No. 31-25.) R. Gates Construction paid these invoices in cash and considered the sums to constitute "wages." (ECF No. 31-20 at 28:6-20, 31:8-32:22, 58:6-7; ECF No. 31-4 at 28:10-29:2.; ECF No. 31-21 at RTG000027.) Tomczewski did not report these wages as part of his "business income," categorizing the sums paid by R. Gates Construction separately and distinctly from his income related to his work as a home improvement contractor. (ECF No. 31-4 at 28:10-29:1; ECF No 31-17; ECF No. 31-20 at 28:6-18; Exs. X-EE, ECF Nos. 31-27 through 31-31-34; ECF No. 31-35.)

The fifth factor, "whether the work is part of the regular business of the employer," is also undisputedly satisfied in this case. Tomczewski's work for R. Gates Construction included daily feeding of feral cats (ECF No. 11 at ¶ 29; ECF No. 31-4 at 42:16-18; ECF No. 31-20 at 16:13-17:2, 19:11-16, 86:20-87:17, 125:21-127:2); collecting rent from tenants of properties owned by Gajewski (ECF No. 11 at ¶ 29; ECF No. 3-4 at 42:13-15; ECF No. 31-

20 at 31:15-32:22; ECF No. 31-21); and sundry jobs at Gajewski's home and farm, such as bailing hay and working on Gajewski's stables (ECF No. 31-4 at 42:21-23; ECF No. 31-20 at 21:3-15; 22:5-15; 23:2-14). This work was well within R. Gates Construction's regular business, which included carpentry (ECF Nos. 31-11 through 31-13), maintenance and operation of Streamwood Farms (ECF No. 31-6 at p. 23), and the construction of Gajewski's new home (ECF No. 31-6 at p. 30). Notably, however, Tomczewski's work for R. Gates Construction went well beyond the scope of the services which would ordinarily be performed by an independent home improvement contractor.

As the Maryland Court of Appeals noted in the *Whitehead* case, the factor of control is the most important in this analysis. 497 A.2d at 809. It is undisputed that R. Gates Construction, through Gajewski, essentially exercised absolute control over Tomczewski. It is undisputed that Gajewski would instruct Tomczewski daily on when and where he was needed and what work would be done. (ECF No. 11 at ¶ 29; ECF No. 31-14 at 15:6-17, 32:9-35:10, 40:10-44:21; ECF No. 31-4 at 47:23-51:24; ECF No. 31-20 at 23:2-7, 49:17-22, 50:21-51:1, 51-9-52:9; ECF No. 31-14 at 15:6-17:9, 32:9-35:10, 40:10-44:2.) R. Gates Construction, through Gajewski, controlled and directed the manner in which Tomczewski performed this work as well. (ECF No. 31-20 at 23:2-7; 49: 17-22; 50:21-51:1; 51-9-52:9; ECF No. 31-14 at 15:6-17:9, 32:9-35:10, 40:10-44:2; ECF No. 31-4 at 48:8-51:24.) Whenever Gajewski instructed Tomczewski that there was work to do for R. Gates Construction, Tomczewski would prioritize that work over projects for his home improvement clients and perform whatever work Gajewski instructed. (*Id.*; ECF No. 31-20 at 23:2-7, 49:1-22, 50:21-51, 51:9-52:9, 111:14-113:14.) Gajewski sometimes worked

alongside Tomczewski, and, when he did, Gajewski would direct Tomczewski's work.  (ECF No. 31-20 at 49:6-22, 51:9-18, 53:1-54, 59:11-20, 61:13-62:9, 62:16-63:12, 64:10-65:24.)  In performing his work, Tomczewski often used tools, equipment, and materials supplied by R. Gates Construction.  (ECF No. 31-21 at 47:10-48, 52:10-20.)

On the day of the accident giving rise to this lawsuit, Tomczewski was acting under Gajewski's direct and immediate supervision.   Tomczewski was ordered to bring the backhoe across the farm, where Gajewski needed him to help him unload sawdust for the horse stables.  (ECF No. 31-20 at 17:22-18:4, 53:1-55:13, 61:13-18; ECF No. 31-14 at 31:20-34:7; ECF No. 31-19 at No. 23.)   At all times during the sawdust work, Tomczewski was acting at the express directions of Gajewski.  (ECF No. 31-20 at 64:22-65:24; ECF No. 31-23 at p. 10.)  He was acting at Gajewski's instruction when he instructed the truck driver to shake the dumpster (ECF No. 31-20 at 61:24-64:5; ECF No. 31-23 at pp. 8-9), and he was acting at Gajewski's instruction when he went to assess the effects of these efforts (ECF No. 31-20 at 63:6-12, 64:10-21; ECF No. 31-23 at pp. 8-9).

Quite simply, there is no genuine dispute as to any material fact in this case with respect to Tomczewski's de facto status as an employee of R. Gates Construction. Accordingly, Mutual Benefit is entitled to judgment as a matter of law.  The Defendants' arguments to the contrary are without merit.  The fact that Tomczewski was licensed as a home improvement contractor and owned a business through which he performed some home improvement work for other clients has no bearing on the degree of control that R. Gates Construction exerted over his work for the company.

Subjective beliefs as to the nature of the employment relationship are not dispositive.

*See Whitehead*, 497 A.2d at 812.  Furthermore, there is no evidence in this case that Gajewski considered Tomczewski to be acting as an independent contractor.  While some of Tomczewski's work for R. Gates Construction constituted "construction services" as defined by § 3-901(b), (ECF No. 31-4 at 49:7-51:24), R. Gates Construction never provided Tomczewski any notice required by § 3-914 to be provided to an independent contract or "exempt person" (ECF No. 31-16; ECF No. 31-18; ECF No. 31-25; ECF No. 31-37). Additionally, R. Gates Construction did not file an IRS Form 1099-MISC, which is required when a company pays an individual acting as an independent contractor an amount in excess of $600 in a calendar year, with respect to the work done by Tomczewski.  (*Id.*)  R. Gates Construction's deductions for subcontractor labor on its tax returns never included the cash payments made to Tomczewski.   (ECF No 31-8.)   In fact, R. Gates Construction represented to Mutual Benefit that it did not use subcontractors and "never did never will." (ECF No. 31-56.)  Similarly, Tomczewski referred to Gajewski as his "employer" and his "boss" (ECF No. 31-20 at 64:22-65:24; ECF No. 31-23 at p. 10), and he never executed any contracts for R. Gates Construction or Gajewski specifying his status as a home improvement contractor, as he did with other businesses and individuals for whom he worked (ECF No. 31-4 at 38:3-8; ECF No. 31-20 at 23:15-20, 45:10-46:1).

Finally, Defendant Tomczewski's argument that Maryland Labor and Employment Code § 9-236 decides this case is also without merit.  This statute provides:

> An individual is a covered employee while performing a service for compensation in the course of the business, occupation, profession, or trade of an employer if, in relation to the services, the individual:
>
> (1) does not maintain a separate business;

(2) neither represents to the public that the individual provides the service nor provides the service to the public; and

(3) does not have a covered employee.

Md. Code Ann. Lab. & Empl. § 9-236.  Tomczewski argues that because these criteria are not met in this case, the issue of control is irrelevant, and he is not a "covered employee," and, by extension, he is an independent contractor by statutory definition.  (ECF No. 33 at 9.)  However, Tomczewski fails to recognize that this statute stands for the proposition that an individual who works exclusively for one person or entity is automatically a covered employee under Maryland's Workers' Compensation Act.  The statute speaks only to presumptive employment for purposes of the Workers' Compensation Act.  It establishes no contrary presumption.  The fact that an individual does not meet the requirements to be considered a "covered employee" in the context of workers' compensation does not automatically mean that such individual therefore is an independent contractor.

Maryland law dictates that the issue of whether Tomczewski was an employee of R. Gates Construction is determined by application of the right-to-control test.  Pursuant to that test, as clearly set forth by the Maryland Court of Appeals in the *Whitehead* case, the relationship between R. Gates Construction and Tomczewski was one of an employer and employee.  Accordingly, under the plain language of the Policy, Mutual Benefit has no obligation to defend or indemnify R. Gates Construction and Gajewski in the underlying litigation in the Circuit Court for Baltimore County.

**B. Mutual Benefit May Rescind its Policy Issued to R. Gates Construction.**

Mutual Benefit asserts that it is entitled to rescind the Policy because R. Gates Construction made repeated affirmative material representations and omitted material facts

in the course of Mutual Benefit's underwriting.  (ECF No. 1 at ¶ 48-65.)  This Court has held that a court "'may declare an insurance policy void *ab initio* if it finds that an insurer issued a policy in reliance on a material misrepresentation in the application.'"  *Dominant Invs. 113, LLC v. U.S. Liab. Ins. Co.*, 247 F. Supp. 3d 696, 700-01 (D. Md. 2017) (quoting *Encompass Home & Auto Ins. Co. v. Harris*, 93 F. Supp. 3d 424, 432 (D. Md. 2015) (internal citations omitted)).  "The court 'must engage in a two-pronged inquiry to determine whether the insurer may validly rescind the policy.   First, the court must determine whether a misrepresentation occurred.    Second, the court must determine whether the misrepresentation was material to the risk assumed by the insurer.'"  *Id.* at 701 (quoting *Harris*, 93 F. Supp. 3d at 432).

R. Gates Construction made multiple misrepresentations to Mutual Benefit.  First, when responding to Mutual Benefit's audit forms, which plainly required information concerning all R. Gates Constructions' employees, including their identities, duties, and remuneration, R. Gates Construction never indicated that Tomczewski was the company's employee.  (ECF No. 38; Starz Decl. at Exs. 5 and 6, Audit Forms, ECF Nos. 31-52 and 31-53.)  As the above analysis explains, Tomczewski was an employee of R. Gates Construction.  "It is well established under Maryland law that a misrepresentation need not be an actual statement."  *Id.* (citing *John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Adams*, 107 A.2d 111 (Md. 1954)).   A misrepresentation by omission occurs when an insurer plainly requests certain information and the applicant or insured fails to provide it.  *See Encompass Home and Auto Ins. Co. v. Harris*, GLR-12-2588, 2013 WL 6095496, at * 4 (D. Md. Nov. 19, 2013) (citing Md. Code Ann., Ins. § 12-207 (indicating an omission or concealment of fact may

prevent recovery under an insurance policy or contract)); *see also Fitzgerald v. Franklin Life Ins. Co.*, 465 F. Supp. 527 (D. Md. 1979) (holding that "since the insurer's question plainly requested such information and [the applicant] failed to provide it," the Court concluded that the nondisclosure was a misrepresentation).  By never identifying Tomczewski as the company's employee, R. Gates Construction made a misrepresentation by omission.

R. Gates Construction also affirmatively misrepresented the nature of its business.  R. Gates Construction continuously represented to Mutual Benefit that its business activities consisted solely of carpentry and snow removal.  (ECF No. 1-2 at 5 of 135; ECF Nos. 31-11 through 31-13.)   In the course of investigating Tomczewski's claims against R. Gates Construction and Gajewski, R. Gates Construction for the first time disclosed that the company had a contract to supply equipment and to operate and maintain Gajewski's farm and private stables.  (ECF No. 31-38 at ¶ 22.)  Such contract had been in place since 2000. (ECF No. 31-6 at pp. 22-23.)

R. Gates Constructions' misrepresentations were material.  With respect to the nondisclosure of Tomczewski's status as an employee, Mutual Benefit's Policy was priced on an estimated basis and was subject to annual audit to assess the insured's risks and whether additional premium should be collected.  (ECF No. 1-2 at 12 of 135.)  The number of employees on an insured's payroll affects the insured risk, and the risks posed by a company with few or no employees are substantially different than those posed by a company with multiple employees.  (ECF No. 37 at 10; ECF No. 31-38 at ¶ 10.)  The greater number of employees, particularly those engaged in manual labor, the higher the premium will be.  (*Id.*) If  R.  Gates  Construction  had  properly  identified  Tomczewski  as  an  employee,  Mutual

Benefit asserts it would have charged additional premium for the Policy and confirmed the existence and sufficiency of the company's workers' compensation insurance before accepting the risk. (ECF No. 31-38 at ¶ 18.)

With respect to the affirmative misrepresentation of the nature of R. Gates Construction's business, Mutual Benefit's underwriting guidelines prohibit insuring risks associated with farming operations and the operation of stables, as well as the rental of contractor equipment. (*Id.* at ¶¶ 23-24; ECF No. 31-43.) Mutual Benefit asserts that had R. Gates Construction disclosed the fact that it had a contract to supply equipment and perform the daily maintenance for and operation of Gajewski's farm, it would have refused to insure R. Gates Construction. "This Court has held that an uncontested affidavit from an insurer's underwriting department that a policy would not have been issued if the insurer had known of the applicant's misrepresentation is 'adequate to find materiality as a matter of law.'" *Dominant Invs.*, 247 F. Supp. 3d at 703 (quoting *Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547, 552 (D. Md. 2001)); *see also Bryant v. Provident Life and Accidents Ins., Co.*, 22 F. Supp. 2d 495, 499 (D. Md. 1998)).

In sum, a material misrepresentation is one that may "reasonably have affected the determination of the acceptability of the risk." *Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 512 (D. Md. 2002). R. Gates Constructions' misrepresentations made it impossible for Mutual Benefit to accurately and properly assess the insured's risks. R. Gates Construction understood and agreed, under Condition 6 of the Policy, that Mutual Benefit was insuring it in reliance on its representations. (ECF No. 1-2 at 38 of 135.) It failed to accurately describe the nature of its work, as well as the identity and existence of its

employee, Tomczewski.   Mutual Benefit is entitled to rescind the Policy due to R. Gates Construction's repeated affirmative material misrepresentations and omissions of material facts in the course of Mutual Benefit's underwriting.

## **CONCLUSION**

For the reasons stated above, Plaintiff Mutual Benefit Insurance Co.'s Motion for Summary Judgment (ECF No. 31) is GRANTED.   Defendant Tomczewski's Cross-Motion for Summary Judgment (ECF No. 33) is DENIED.   Declaratory Judgment shall be entered in favor of Mutual Benefit.

A separate Order follows.

Dated: November 30, 2020.

_____/s/_____
Richard D. Bennett
United States District Judge